# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JULY SESSION, 1999

FILED

October 8, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | C.C.A. NO. 01C01-9810-CR-00400 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **DAVIDSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. RANDALL WYATT, JR.** |
| **REGINALD COBB,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Aggravated** |
| | ) | **Assault/Trespassing)** |


FOR THE APPELLANT:

JEFFREY A. DEVASHER
Assistant Public Defender
(on appeal)

RICHARD TENNENT
Assistant Public Defender
(at trial)

IVANETTA DAVIS
Assistant Public Defender
(at trial)
1202 Stahlman Building
Nashville, TN 37201

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

LUCIAN D. GEISE
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

VICTOR S. JOHNSON
District Attorney General

BRET GUNN
Assistant District Attorney
Washington Sq., Ste. 500
Nashville, TN 37201

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

The appellant, Reginald Cobb, was charged in a seven (7) count indictment with two (2) counts of aggravated assault, one (1) count of aggravated burglary, two (2) counts of unlawful possession of a weapon and two (2) counts of felony reckless endangerment. A Davidson County jury found the appellant guilty of two (2) counts of aggravated assault, one (1) count of criminal trespass, one (1) count of unlawful possession of a weapon and two (2) counts of misdemeanor reckless endangerment. The trial court sentenced the appellant as a Range II offender to consecutive terms of seven (7) years for each aggravated assault conviction and eleven (11) months and twenty-nine (29) days for misdemeanor reckless endangerment.[1] The trial court further imposed concurrent sentences of thirty (30) days for criminal trespass and two (2) years for felonious possession of a weapon. On appeal, the appellant claims that the trial court erred in (1) failing to sever Counts Six and Seven from the remainder of the indictment, and (2) imposing consecutive sentences. After a thorough review of the record before this Court, we affirm the judgment of the trial court.

## FACTS

In August 1996, the appellant and Ester Johnson began dating, and soon thereafter, the appellant moved in with Johnson, Johnson's four children,

---

[1] The trial court merged the appellant's two convictions for misdemeanor reckless endangerment.

Johnson's brother, Anthony Crenshaw, and Crenshaw's fiancé, Sherry Carr. The appellant and Johnson had an agreement whereby the appellant would drive Johnson's son, James, to school each morning. On the morning of October 29, 1996, the appellant was not at home, so Johnson had to take James to school herself. On the way, Johnson observed the appellant's car in the parking lot of Shoney's on Trinity Lane in Nashville. Johnson became upset and decided to go inside Shoney's and confront the appellant.

Johnson and the appellant argued for several minutes, and when Johnson walked out of the restaurant, the appellant followed her. Johnson got into her car and attempted to drive out of the parking lot. However, the appellant opened the driver's side car door and attempted to get into the car. As Johnson was backing her car out of the parking lot, the appellant held onto the steering wheel and repeatedly struck Johnson with his free hand. The struggle continued until Johnson's vehicle ran into another car traveling on Trinity Lane and then came to a rest after striking a telephone pole. After the vehicle came to a rest, the appellant proclaimed, "[b]itch, you're going to take the blame for this." The appellant then fled from the scene in another automobile. Johnson sustained three (3) broken bones in her ankle, and James, who was also present in the car, received a neck injury as a result of the incident. After meeting with law enforcement authorities, Johnson took out warrants against the appellant for this incident.

Several days later, the appellant contacted Johnson from Memphis, where he was staying in a hotel room. Johnson traveled to Memphis in an attempt to

reconcile with the appellant, but the meeting ended violently. Johnson testified at trial that she had no further contact with the appellant until December 6.

On the evening of December 6, the appellant telephoned Johnson from a hotel in Nashville. He wanted Johnson to visit him at his hotel and demanded that she drop the charges against him for the incident on October 29. When she refused, he threatened to kill her.

The next morning, Johnson and a male friend, Steven Lewis, were lying on her bed when the appellant walked into Johnson's bedroom. Johnson testified that she did not invite the appellant to come over. The appellant looked at Johnson, smiled and said, "Bitch." He then put his hand in his pocket, pulled out a handgun, cocked the gun and put it in Johnson's face. . However, when the appellant pulled the trigger, the gun did not fire. After hitting Johnson with the gun, the appellant then pointed the gun towards Lewis, cocked it and pulled the trigger. Once again, the gun did not fire. Lewis, Johnson and the appellant struggled for the gun, and Johnson yelled for the assistance of Crenshaw. Lewis extricated himself from the fight and fled from the residence.

Crenshaw, who was in the next room, heard the scuffle and ran into his sister's bedroom to assist. As Crenshaw attempted to grab the appellant away from his sister, he got caught in the struggle as well. At some point, a second gun was produced, and Johnson fired this gun during the struggle. Crenshaw ran to a neighbor's residence to call emergency personnel, but Johnson testified that she and the appellant continued to fight. Johnson fired the gun several more times, striking the appellant in the groin and buttocks. The appellant then left Johnson's residence, but was apprehended by the police a short time later.

The appellant was charged in a seven (7) count indictment with the aggravated assault of Ester Johnson on December 7 in Count One, the aggravated assault of Steven Lewis on December 7 in Count Two, the aggravated burglary of Johnson's residence on December 7 in Count Three, the unlawful possession of a weapon on December 7 in Counts Four and Five, the felonious reckless endangerment of Ester Johnson on October 29 in Count Six, and the felonious reckless endangerment of James Jackson on October 29 in Count Seven. The jury returned guilty verdicts for two (2) counts of aggravated assault as alleged in Counts One and Two, the lesser included offense of criminal trespass in Count Three, unlawful possession of a weapon as alleged in Count Four and the lesser included offense of misdemeanor reckless endangerment in Counts Six and Seven. The trial court merged the appellant's convictions for misdemeanor reckless endangerment in Counts Six and Seven. The jury acquitted the appellant of unlawful possession of a weapon in Count Five of the indictment.

The trial court sentenced the appellant as a Range II offender to concurrent sentences of thirty (30) days for criminal trespass and two (2) years for felonious possession of a weapon. The trial court also imposed consecutive terms of seven (7) years for each aggravated assault conviction and eleven (11) months and twenty-nine (29) days for misdemeanor reckless endangerment, giving the appellant an effective sentence of fourteen (14) years, eleven (11) months and twenty-nine (29) days. From his convictions and sentences, the appellant brings this appeal.

## SEVERANCE OF OFFENSES

In his first issue, the appellant claims that the trial court erred in failing to sever Counts Six and Seven charging felony reckless endangerment from the rest of the indictment. He argues that the offenses charged in Counts Six and Seven are not part of a common scheme or plan with the offenses charged in Counts One through Five of the indictment. In addition, he contends that the evidence of the reckless endangerment counts would not be admissible in the trial of the remaining counts. Therefore, he asserts that he was entitled to a severance of offenses under Tenn. R. Crim. P. 14(b)(1).

Prior to trial, the court held a hearing to determine whether to sever Counts Six and Seven of the indictment. The trial court concluded that evidence of the incident on October 29 would give the jury a clearer understanding about the relationship between the appellant and Johnson. Further, the trial court found that evidence of the October 29 incident would be permissible evidence of intent and the motive for the incident on December 7. As a result, the trial court concluded that Counts Six and Seven of the indictment charging the appellant with reckless endangerment would not be severed from Counts One through Five of the indictment.

Under Tenn. R. Crim. P. 8(b), "[t]wo or more offenses may be joined in the same indictment . . . with each offense stated in a separate count, . . . if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character." However, if offenses are joined in the same indictment pursuant to Tenn. R. Crim. P. 8(b), a defendant "shall have a right to a severance

-6-

of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." Tenn. R. Crim. P. 14(b)(1). Under Tenn. R. Crim. P. 14(b)(1), the trial court is required to conduct a pretrial hearing to determine whether (1) the offenses are part of a common scheme or plan; and (2) the evidence of one offense would be admissible in the trial of the other offense(s). State v. Hoyt, 928 S.W.2d 935, 944 (Tenn. Crim. App. 1995).

The trial court is first required to determine whether the offenses are part of a common scheme or plan. "A common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes." State v. Hallock, 875 S.W.2d 285, 289-90 (Tenn. Crim. App. 1993). There are three different types of "common scheme or plan" evidence: (1) distinctive designs or signature crimes; (2) a larger continuing plan or conspiracy; and (3) the same transaction. State v. Hoyt, 928 S.W.2d at 943; State v. Hallock, 875 S.W.2d at 290.

> To qualify as signature crimes, the *modus operandi* must be so unique and distinctive as to be like a signature. The larger, continuing plan category encompasses groups or sequences of crimes committed in order to achieve a common ultimate goal or purpose. The same transaction category involves crimes which occur within a single criminal episode.

Hallock, 875 S.W.2d at 290 (citing N. Cohen, D. Paine & Sheppeard, Tennessee Law of Evidence, § 404.11 (2nd ed. 1990)).

Under the second prong of Tenn. R. Crim. P. 14(b)(1), the trial court is required to determine the admissibility of the evidence of one crime in the trial of the other(s). Hoyt, 928 S.W.2d at 944. Evidence that the defendant committed

crimes other than that for which he is on trial is typically inadmissible due to the danger that the jury might infer guilt from propensity. Tenn. R. Evid. 404(b). However, evidence of other crimes, wrongs or acts may be admissible if that evidence is relevant to an issue other than character. Id.; Hoyt, 928 S.W.2d at 944. In order for a trial court to properly admit evidence of other crimes under Tenn. R. Evid. 404(b), the court must hold a jury-out hearing to determine whether the evidence is relevant to issues such as the defendant's motive, intent, guilty knowledge, identity, or the absence of mistake or accident. Hoyt, 928 S.W.2d at 944. Moreover, the trial court must conclude that the probative value of the evidence outweighs the prejudicial effect to the defendant. Tenn. R. Evid. 404(b); Hoyt, 928 S.W.2d at 944.

In the present case, we conclude that the trial court erred in finding that the crimes committed on October 29 and December 7 constituted a common scheme or plan under the first prong of Tenn. R. Crim. P. 14(b)(1). The crimes were in no way similar and, therefore, are not so unique and distinctive "as to be like a signature." *See* Hallock, 875 S.W.2d at 290. The October 29 offenses were committed when the appellant recklessly interfered with Johnson's driving, causing her automobile to collide with another. In contrast, the December 7 offenses were committed when the appellant entered Johnson's home brandishing a handgun. Furthermore, there is no evidence in the record that the crimes were planned to achieve a common ultimate goal or purpose. Moreover, as the offenses occurred more than thirty (30) days apart, they can not be part of the same criminal episode.

On the other hand, under the second prong of Tenn. R. Crim. P. 14(b)(1), evidence of the offenses on October 29 would be admissible in the trial for the offenses on December 7. After the commission of the offenses on October 29, Johnson initiated criminal proceedings against the appellant. On December 6, the appellant telephoned Johnson and demanded that she drop the charges against him. When she refused, the appellant threatened to kill her. The next day, the appellant entered Johnson's home and pointed a weapon at Johnson and her friend, Lewis. Evidence of the October 29 offenses is relevant to establish the appellant's motive for the December 7 offenses. *See* State v. Smith, 868 S.W.2d 561, 574 (Tenn. 1993). Additionally, evidence of the appellant's threat establishes the appellant's intent to commit an assault when he entered the residence, an element of the charged offense of aggravated burglary.

Because the crimes committed on October 29 and December 7 did not constitute a common scheme or plan, the trial court erred in denying the appellant's motion to sever the offenses. However, we conclude that such error was harmless in that the appellant has failed to establish that he was prejudiced by the trial court's failure to sever Counts Six and Seven from the rest of the indictment. State v. Hodgkinson, 778 S.W.2d 54, 61 (Tenn. Crim. App. 1989). As previously noted, evidence of the October 29 offenses (Counts Six and Seven) would be admissible in the trial of the other offenses (Counts One through Five). Moreover, the appellant was convicted of the lesser offense of criminal trespass in Count Three, the lesser offenses of misdemeanor reckless endangerment in Counts Six and Seven and acquitted of felonious possession of a weapon in Count Five of the indictment. Clearly, the jury properly considered

the evidence for each offense separately and did not improperly infer guilt as a result. Thus, the appellant has not established that he was prejudiced by the failure to sever the offenses. *See* State v. Wiseman, 643 S.W.2d 354, 363 (Tenn. Crim. App. 1982). The error in failing to sever was harmless. Tenn. R. Crim. P. 52(a).

## CONSECUTIVE SENTENCING

In his next issue, the appellant argues that the trial court erred in ordering that some of his sentences run consecutively. This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tenn. Code Ann. § 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing;
>
> (2) [t]he presentence report;

(3) [t]he principles of sentencing and arguments as to sentencing alternatives;

(4) [t]he nature and characteristics of the criminal conduct involved;

(5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and

(6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Consecutive sentencing is governed by Tenn. Code Ann. § 40-35-115. A trial court may order sentences to run consecutively if it finds that one or more of the statutory criteria exists by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115(b); State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Additionally, a trial court must also find that an extended sentence is "necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

In imposing the appellant's sentences, the trial court found that the appellant was a dangerous offender whose behavior indicated little regard for human life and no hesitation about committing a crime in which the risk to human life was high. Tenn. Code Ann. § 40-35-115(b)(4). The trial court also noted that the appellant had an extensive record of criminal activity. See Tenn. Code Ann. § 40-35-115(b)(2). The trial court further found that consecutive sentences were related to the severity of the crimes committed by the defendant and were necessary to protect the public against further criminal conduct by the defendant. As a result, the trial court ordered that the appellant's sentences for both counts

-11-

of aggravated assault and his sentence for misdemeanor reckless endangerment run consecutively to one another.[2]

After thoroughly reviewing the record before this Court, we conclude that the trial court properly imposed consecutive sentences. The record fully supports the trial court's finding that the appellant is a dangerous offender who has little regard for human life and no hesitation about committing a crime where the risk to human life is high. Tenn. Code Ann. § 40-35-115(b)(4). The evidence at trial showed that on October 29, the appellant followed Johnson from the Shoney's restaurant, forced his way into her car and interfered with her driving while on a busy street in Nashville endangering not only Ms. Johnson but other members of the public as well. He repeatedly struck Johnson and tried to gain control of her vehicle until her vehicle collided with another car and then ran into a telephone pole. Approximately one month later, the appellant entered Johnson's home carrying a weapon. He walked into Johnson's bedroom, callously smiled, pointed the weapon at Johnson and pulled the trigger. Fortunately, the gun did not fire. However, the appellant struck Johnson with the weapon and then pointed the weapon at Lewis and pulled the trigger again. It is clear that the appellant has little regard for human life and no hesitation about committing a crime where the risk to human life is high.

Secondly, we agree with the trial court that the appellant has an extensive record of criminal activity. Tenn. Code Ann. § 40-35-115(b)(2). At the time of sentencing, the appellant was twenty-seven (27) years of age. He had

_____

[2] The trial court ordered that the appellant receive concurrent sentences for his convictions for criminal trespass and unlawful possession of a weapon.

approximately eighteen (18) prior convictions for various felonies and misdemeanors. Moreover, he had numerous arrests as well as approximately ten (10) pending charges against him.

Finally, we conclude that the aggregate term imposed by the trial court is reasonably related to the severity of the offenses committed by the appellant and that consecutive sentencing is necessary to protect the public against further criminal conduct by the appellant. *See* State v. Wilkerson, 905 S.W.2d at 939. The trial court properly imposed consecutive sentences in this case.

This issue is without merit.


_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
THOMAS T. WOODALL, JUDGE


_____
NORMA MCGEE OGLE, JUDGE